Outley v. State 






AFFIRMED
APRIL 19, 1990
Â 
NO. 10-90-028-CR
Trial Court
# 90-248-C
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

CHRISTOPHER LEE OUTLEY,
Â Â Â Appellant
v.

THE STATE OF TEXAS
Â Â Â Appellee

* * * * * * * * * * * * *

 From 54th Judicial District Court
McLennan County, Texas

* * * * * * * * * * * * *

This is an extradition case. Appellant Christopher Lee Outley
is sought by the State of California on a charge of murder
committed on October 16, 1989 at approximately 4:40 P.M. His
application for writ of habeas corpus challenging the extradition
warrant was rejected by the trial court. This appeal resulted. We
affirm the trial court's order.
Â Â Â Â Â Appellant tacitly concedes that the state presented a prima
facie case for extradition by introducing the Governor's Warrant
and supporting extradition documents and by fingerprint
identification. He contends that the trial court erred in
overruling his application for writ of habeas corpus because he
established that he was not in the State of California at the time
the offense was committed. We overrule his contention and we
affirm the judgment.
Appellant used the testimony of relatives to establish that he
was not in California at the time the offense was committed. The
testimony was inconclusive in that no witness could positively
identify the date appellant arrived at his mother's home in Texas. 
His mother testified that she was not even sure of the month in
which he showed up unannounced at her home. Appellant's cousin
testified that she thought it was "a Thursday" when he called her
from the San Diego airport. She said she knew he was in California
when he called because "He told me." When asked about the date she
received the phone call, she stated that she knew that it was in
the year 1989 but that she did not remember the month or the year. 
She could not even conclusively establish that it was the month of
October but stated that it "could have been." Appellant's sister
then testified that her brother was in town [Waco, Texas] on
October 26, 1989. She said she just "knew" that it was October
26th, but she neither gave nor established a credible reason for
having knowledge of that particular date. She stated that she
returned from work on Tuesdays and Thursdays around 10:30 p.m. so
it had to be a Thursday on which he arrived. She never
conclusively established that it was a Thursday and not a Tuesday. 
Another sister testified that it was a Thursday night in October
when her brother returned home and that she believed it could have
been the 26th. However, she failed to remember the subsequent date
of her brother's arrest, indicating an inability to retain dates. 
 Finally, appellant's mother testified that she did not remember
the exact date that he came home. She then testified that it was
a Thursday in October. She later testified that she was not sure
if it was October or November, but she "knew it was way before
Thanksgiving" although she was not positive of the day.
Appellant's witnesses were all family members: his mother,
two sisters and a cousin. All were interested witnesses. 
Testimony only from interested witnesses is insufficient to rebut
the presumption raised from the extradition papers that appellant
was in the demanding state when the offense was committed. Ex
parte Harrison, 469 S.W.2d 571, 572 (Tex.Cr.App. 1971), wife; Ex
parte Mackerman, 376 S.W.2d 350, 351 (Tex.Cr.App. 1964) wife; Ex
parte Castillo, 700 S.W.2d 350, 352 (Tex.App. 2 Dist. 1985, no
pet.) wife and brother. Moreover, the testimony of appellant's
witnesses did not establish with factual certainty that appellant
was not in California when the offense was committed.
The judgment is affirmed.
Â Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
VIC HALL
DO NOT PUBLISHJustice 



ing a conversation about stranger dangerÂ that she
had been touched inappropriately.Â  She pointed to her vaginal area when telling
her foster mother about the touching.Â  After the allegation was reported to the
authorities, J.L. was interviewed by Teresa Evans at the Gingerbread House, Ellis CountyÂs Child Advocacy Center.Â  J.L. told Evans that her Âreal dadÂs dadÂ touched her
private, which she indicated on a drawing was her genitals, under her clothes.Â 
J.L. also told Evans that it happened at LyonÂs house in Waxahachie in his
bedroom while they watched television.Â  She said he touched her with a rubbing
motion on her skin.Â  At trial, although she was unable to provide details about
the event or the name of the person who touched her, J.L. identified Lyon as
the person who touched her, said that it happened more than once, and said that
no one other than Lyon had touched her.

Â Â Â Â Â Â Â Â Â Â Â  In a counseling session with Caroline
Von Helms, and while talking about a stuffed animal given to J.L., J.L. told
Helms about the interview she had gone to.Â  J.L. drew a doll on a white board
and started coloring in different parts of the doll, primarily the genitals.Â 
When asked what she was doing, J.L. responded that those were the areas where her
papa touched her.Â  When Helms stated that she did not know who her papa was,
J.L. explained that he was her fatherÂs father.Â  When asked whether he touched
her above or below her clothes, she said Âbelow.ÂÂ  Helms further testified that
it was not unusual for children J.L.Âs age to have a hard time remembering the
specifics of what happened because their memory has not developed fully and,
specifically with J.L., because she was no longer in the abusive environment
and had moved beyond it.Â  Helms also stated that it was not uncommon to have no
medical evidence of inappropriate touching.

Â Â Â Â Â Â Â Â Â Â Â  In two issues, Lyon argues that the
evidence was legally and factually insufficient to support his conviction
because there was no medical evidence of abuse, and because J.L. could not tell
the jury the name of the person who touched her, could not provide details
about the incident, and could not recall when or where the incident happened.Â 
He also argues that because the touching described was consistent with applying
medication to the genital area, a theory that was only mentioned in argument to
the jury, the evidence was legally and factually insufficient to prove intent
to arouse and gratify his sexual desire.Â  See Tex. Penal Code Ann. Â§ 21.11(a), (c) (Vernon 2003).Â  

Â Â Â Â Â Â Â Â Â Â Â  A conviction for indecency with a
child is supportable on the uncorroborated testimony of the victim of the
sexual offense.Â  See Tex. Code
Crim. Proc. Ann. art. 38.07 (Vernon 2005).Â  The requisite specific
intent of the offense can be inferred from the defendant's conduct and remarks
and all the surrounding circumstances.Â  McKenzie v. State, 617 S.W.2d
211, 216 (Tex. Crim. App. [Panel Op.] 1981).Â  Additionally, the lack of
physical or medical evidence does not necessarily render the evidence
insufficient to support a conviction.Â  See Murphy v. State, 4 S.W.3d
926, 930 (Tex. App.ÂWaco 1999, pet. ref'd).Â  And further, there is no evidence
in this record that Lyon was in the process of applying medication to J.L. when
the incident occurred or that Lyon was a caregiver that would be responsible
for such activity.

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence under the
appropriate standards of review, we find the evidence legally and factually
sufficient to support the conviction.Â  See Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); Castillo v.
State, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007); Watson v. State,
204 S.W.3d 404, 415 (Tex. Crim. App. 2006).Â Â  LyonÂs issues are overruled.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The trial courtÂs judgment is
affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before
Chief Justice Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Vance, and

Â Â Â Â Â Â Â Â Â Â Â  Justice
Reyna

Affirmed

Opinion
delivered and filed May 21, 2008

Do
not publish 

[CR25]